No. 12-0206 – *Gaddy Engineering Company v. Bowles Rice McDavid Graff & Love, LLP, and J. Thomas Lane, individually*

**FILED**

**June 14, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Justice Ketchum, dissenting:

A great injustice has been done in this case. Gaddy Engineering Company contends that (1) it discovered that a gas company was underpaying its natural gas lessors; (2) it met with J. Thomas Lane of the law firm Bowles Rice, explained what it had found and proposed that the two parties work together to identify lessors and obtain clients[1] who had been underpaid in order to bring a lawsuit against the gas company; (3) Bowles Rice liked the idea and the two parties entered into an oral agreement to jointly work on the case and to split the fee recovered from the lawsuit; (4) Bowles Rice was to charge a contingent one-third fee to the clients it obtained and Gaddy would get one-third of the contingent fee recovered by Bowles Rice; (5) Gaddy alleged that Mr. Lane of Bowles Rice told Gaddy that lawyers are not allowed to split their fees with non-attorneys, but stated that Bowles Rice would give Gaddy one-third of its recovery and call it a "bonus"; (6) after both parties obtained clients and performed work under the terms of the agreement, Bowles Rice recovered a fee of approximately $4,000,000.00 from a class action settlement[2]; and (7) when

---

[1]Gaddy employees testified that they were to go out and "chum" clients for the lawsuit.

[2]Gaddy's pretrial memorandum asserts that the fee received by Bowles Rice was $4,000,000.00.

1

Gaddy asked Bowles Rice for its share of the fee according to the terms of their agreement, Bowles Rice essentially replied, "Agreement? What agreement?"

Gaddy subsequently filed a lawsuit against Bowles Rice asking for its share of the $4,000,000.00 fee. The circuit court found that Gaddy presented a genuine issue of material fact on whether the two parties entered into a fee-splitting agreement and concluded that a jury question was presented on this issue. Nevertheless, the court granted summary judgment in favor of Bowles Rice because it concluded that even if an agreement existed, Bowles Rice was excused from performing because of impracticability. This Court's majority decision agreed with the circuit court. Gaddy was denied the opportunity to present its case to a jury. I am deeply troubled by this result.

My review of the record reveals that there is a question of fact regarding whether the agreement Gaddy allegedly entered into with Bowles Rice became impracticable to perform once the *Tawney* class action was certified. A jury should decide this issue. Also, assuming *arguendo* that a jury found that the class action rendered the agreement impracticable to perform, Gaddy is nevertheless entitled to potential relief pursuant to the *Restatement (Second) of Contracts* § 272.

## A. Question of Fact on Impracticability

The circuit court granted Bowles Rice's motion for summary judgment, finding that if there was a fee-splitting agreement, it became impracticable to perform because the

2

clients obtained by Bowles Rice and Gaddy decided to join the *Tawney* class action litigation.

Syllabus Point 2 of *Waddy v. Riggleman,* 216 W.Va. 250, 606 S.E.2d 222 (2004), sets forth

our impracticability test:

> Under the doctrine of impracticability, a party to a contract who claims that a supervening event has prevented, and thus excused, a promised performance must demonstrate each of the following: (1) the event made the performance impracticable; (2) the nonoccurrence of the event was a basic assumption on which the contract was made; (3) the impracticability resulted without the fault of the party seeking to be excused; and (4) the party has not agreed, either expressly or impliedly, to perform in spite of impracticability that would otherwise justify his nonperformance.

By way of background, Gaddy contends that the agreement was that 1) Gaddy

and Bowles Rice would identify lessors with claims against Columbia Natural Resources for

the underpayment of natural gas royalties; 2) Gaddy and Bowles Rice would get those lessors

to hire them to pursue litigation against Columbia; and 3) the case would proceed to litigation

and Gaddy and Bowles Rice would split the fee recovered therein. Gaddy alleged that

Bowles Rice agreed to give Gaddy one-third of the fee Bowles Rice recovered in the

litigation against Columbia. Both parties performed the first two parts of the agreement: they

jointly identified a number of clients and got them to hire Bowles Rice to pursue litigation

against Columbia. After Gaddy and Bowles Rice jointly identified these clients, the *Tawney*

class action, led by another lawyer, was filed. All of the Gaddy/Bowles Rice clients opted

to join the *Tawney* class action in 2004. Nevertheless, Bowles Rice appeared in the class

3

action on behalf of the clients it identified with Gaddy. These large landowner clients comprised a subclass in the class action.

Gaddy presented evidence showing that it continued working on the case after the class action was certified. The *Tawney* class action resulted in a $400,000,000.00 verdict for the plaintiffs in the class. The circuit court approved an attorney fee award of $125,000,000.00. Bowles Rice received a substantial fee, approximately $4,000,000.00 as a result of this successful litigation.

The circuit court determined that the agreement between Gaddy and Bowles Rice became impracticable to perform once their clients joined the class action. In so ruling, the circuit court relied largely on its finding that Gaddy performed *no work* in the case after the class was certified. This ruling ignores evidence Gaddy presented that creates a question of fact on this issue.[3] This evidence includes an affidavit filed by John Bullock, the president of Gaddy, which states

> I performed an enormous amount of work that took years to complete . . . . I contacted numerous land companies, engineers, and attorneys to discuss the legality of Columbia Gas' actions. . . . Gaddy relied on the existence of an agreement and incurred substantial time and costs *in performing work for the Tawney litigation. Gaddy continues to do work for the Tawney claim,*

---

[3]Our longstanding summary judgment jurisprudence is clear that a circuit court is not to weigh the evidence at the summary judgment stage, rather, the circuit court's function is to determine whether a genuine issue of disputed fact exists. Syllabus Point 3 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), states "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial."

*even today*.  Mutual clients of Gaddy and Bowles Rice still contact Gaddy for assistance in settlement distributions.

(Emphasis added.)  The circuit court did not discuss this affidavit in its summary judgment order and did not address why Mr. Bullock's statement that Gaddy performed work in the *Tawney* class action did not create a genuine issue of material fact for a jury to resolve.

In addition to Mr. Bullock's affidavit, Gaddy was awarded $75,000.00 by the circuit court in the *Tawney* class action for work it performed in the case.  This award was based on an invoice Bowles Rice submitted to the *Tawney* court on Gaddy's behalf.  Gaddy refused to accept the $75,000.00 award, arguing that it was entitled to one-third of the fee award Bowles Rice received as the parties had previously agreed upon.

The Gaddy invoice includes three entries from 2006 entitled "Litigation preparation."  The *Tawney* class action was certified in 2004.  The circuit court in the class action approved payment to Gaddy for the "litigation preparation" work it performed in 2006.  This is undisputed.  This document confirms that there is a question of fact as to whether Gaddy continued to perform work in the case after the *Tawney* class action was certified.  Despite this evidence showing that Gaddy worked on the *Tawney* class action in 2006, the circuit court concluded that it was undisputed that Gaddy performed no work in the case after the class action was certified.  This ruling is baffling.  How can a court say Gaddy performed no work in the class action when the same court granted Gaddy a $75,000.00 fee award for work performed in the class action?

5

The record also includes deposition testimony from Ellen Bullock, a Gaddy employee, who testified that she was at a meeting in February or March of 2007 (three years after the class action was certified) with Mr. Lane of Bowles Rice. Ms. Bullock testified that Mr. Lane stated that the litigation was going well and that Bowles Rice would honor its agreement with Gaddy. This testimony does not provide direct evidence that Gaddy continued working on the case after 2004. However, it shows that Bowles Rice and Gaddy continued communicating well after the class action was certified and raises the following question: if Gaddy stopped working on the case when the class action was certified in 2004, why is Mr. Lane continuing to meet with Gaddy in 2007.[4]

Based on all of the above, Gaddy presented more than enough evidence to overcome a summary judgment motion on the issue of impracticability. It is clear that genuine issues of material fact exist as to whether Gaddy continued to perform after the class action was certified. A jury should be allowed to decide (1) whether Gaddy and Bowles Rice entered into an agreement, and (2) if there was an agreement, whether the Gaddy/Bowles Rice clients joining the class action made it impracticable to perform.

---

[4]The record contains two further items showing the continuing communication between Gaddy and Bowles Rice after the class action was certified. First, there is a letter from Bowles Rice to Gaddy in July 2007, memorializing a recent meeting between the parties in which Gaddy's fee was discussed. Second, the record includes a transcribed voicemail from Mr. Lane to a Gaddy employee, Frank McCullough, in 2007, in which Mr. Lane states "my goal from the beginning is to figure out a way to compensate Gaddy[.]"

**B.  *Restatement (Second) of Contracts* § 272**

If a jury found that Bowles Rice was excused from performing under the doctrine of impracticability, Gaddy should still be permitted to seek relief pursuant to the *Restatement (Second) of Contracts* § 272.  This Court has previously adopted §§ 261 and 265 of the *Restatement (Second) of Contracts*.  *See Waddy v. Riggleman*, 216 W.Va. at 258, 606 S.E.2d at 230.  The *Restatement (Second) of Contracts* § 272 allows a court, that finds that an injustice has been committed, to consider just and equitable remedies when a party is excused from performing its contractual duty because of impracticability.  Comment a. of § 272 explains that

> [b]ecause the rules stated in this Chapter might otherwise appear to have the harsh effect of denying either party any recovery following the discharge of one party's duty based on impracticability or frustration, *this Section makes it clear that several mitigating doctrines may be used to allow at least some recovery in a proper case.*

(Emphasis added.)  The present case illustrates "the harsh effect" of denying a party any recovery based on impracticability of performance.  Gaddy researched Columbia's underpayment of royalties.  Gaddy then approached Bowles Rice and pitched the idea of the two parties working together to obtain clients and to pursue litigation against Columbia.[5]

---

[5]The record includes an email from Gaddy employee Frank McCullough to Mr. Lane of Bowles Rice in March of 2004, describing Gaddy's understanding of the agreement the parties had reached:

> Clearly though, the $750 fee (initial fee Gaddy charged to potential claimants), as with your legal evaluation fee, does

(continued...)

Gaddy alleges that the parties performed the first two parts of their agreement, jointly identifying clients and preparing for litigation against Columbia. After their clients joined the class action, neither Gaddy nor Bowles Rice appear to have played a substantial role in the resolution of the class action. At the conclusion of the class action, Bowles Rice received a fee award of approximately $4,000,000.00. Gaddy should be allowed to pursue damages pursuant to § 272 to avoid injustice in this case.

Based on all of the above, I disagree with the majority decision affirming the grant of summary judgment. Gaddy deserves its day in court.

---

[5](...continued)
not cover the true cost of the time expended on the evaluation. Rather, its like fishing – sometimes you have to chum some to gather in the big fish. That is how I view the effort. The big fish will produce some sort of big settlement and I am presuming that there will be some sort of equitable sharing of those proceeds between the folks that make it happen – i.e., the client, Bowles/Lane/George and Gaddy. The more clients the (1) greater probability of having the critical mass I think is important to obtaining an equitable settlement sooner than later and (2) the aggregated larger pot available to split among the participating parties[.]

8